PIPEFITTERS LOCAL NO. 636
DEFINED BENEFIT
PLAN, Plaintiff,

v.

BANK OF AMERICA CORP.
et al., Defendants.

Patricia Grossberg Living
Trust, Plaintiff,

v.

Bank of America Corp.
et al., Defendants.

Anchorage Police and Fire Retirement
System, Plaintiff,

v.

Bank of America Corp.
et al., Defendants.

Nos. 11 Civ. 733 (WHP), 11 Civ. 1982
(WHP), 11 Civ. 2216 (WHP).

United States District Court,
S.D. New York.

June 20, 2011.

**189**

David Avi Rosenfeld, Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP (LI), Melville, NY, for Plaintiff.

Jay B. Kasner, Scott D. Musoff, Skadden, Arps, Slate, Meagher & Flom LLP (N.Y.C.), New York, NY, for Defendants.

### MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiffs in these actions bring claims against Bank of America ("BofA") under the federal securities laws on behalf of themselves and as members of a purported class of purchasers of BofA stock. After publication of notice of this action, the following entities filed motions for consolidation and appointment as lead plaintiff and lead counsel: (1) Sjunde AP–Fonden ("AP7"), Arkansas Teacher Retirement System ("Arkansas Teacher"), and KBC Asset Management ("KBC," and collectively, the "Funds Group"), represented by Labaton Sucharow LLP and Grant & Eisenhofer PA; (2) Pennsylvania Public School Employees' Retirement System ("PSERS"),[1] represented by Barrack, Rodos & Bacine; and (3) RWDSU/ UCFW Local 338 Retirement Funds ("Local 338"), represented by Kirby McInerney, LLP. For the reasons that follow, PSERS is appointed lead plaintiff, and Barrack, Rodos & Bacine is appointed lead counsel.

1. PSERS was originally joined by Forsta AP– Fonden ("AP1"), which has since withdrawn

### BACKGROUND

#### I. *The Litigation*

The present motions arise out of three separate but related class actions. Although the complaints differ in some respects, each makes substantially similar allegations against overlapping defendants for overlapping class periods. Plaintiffs allege two primary types of misconduct. First, they allege that BofA engaged in a practice called "dollar rolling," which involved the transfer of BofA's mortgage-backed securities to another entity, with the understanding that BofA would repurchase them after it had issued its quarterly financial statement. According to Plaintiffs, this practice allowed BofA to conceal from investors the true risks associated with its investments in mortgage-backed securities. Second, Plaintiffs allege that BofA failed to maintain adequate controls in processing foreclosures.

#### II. *The Competing Movants*

AP7 is a Swedish pension fund manager and does not directly own any BofA shares. (Declaration of Richard Poppelman dated Apr. 29, 2011, ¶¶ 3, 8, 9, 14; Hr'g Tr. dated May 18, 2011 8:4–6.) However, Swedish law authorizes AP7 to sue on behalf of the funds it manages. (Declaration of Geoffrey C. Jarvis dated May 2, 2011, Ex. A.) KBC is a manager of mutual, private, and institutional funds. Arkansas Teacher, Local 338, and PSERS are retirement benefit funds. (Joint Declaration of the Funds Group ("Funds Decl.") dated Apr. 20, 2011, ¶ 7.)

Although the members of the Funds Group were not associated prior to the filing of these actions, they have "participated in a conference call to discuss the benefits of serving together as lead plaintiff ... and protocols for managing the litigation." (Funds Decl. ¶ 3–4.) They have also "implemented communication procedures to enable [them] to confer via phone and/or email on short notice to ensure that the Funds Group is able to make timely decisions." (Funds Decl. ¶ 7.)

from consideration.

The relevant financial interest data for each potential lead plaintiff is:

| Movant | Total Shares Purchased | Net Shares Purchased | Net Expenditures | LIFO Loss | FIFO Loss |
|---|---|---|---|---|---|
| Funds Group | 6,664,310 | 4,085,227 | ($70,208,670) | ($20,233,403) | ($24,640,821) |
| AP7 | 3,185,005 | 3,104,704 | ($14,598,550) | ($14,598,550) | ($14,811,215) |
| Arkansas Teacher | 938,959 | 79,959 | ($2,125,315) | ($1,623,346) | ($3,607,139) |
| KBC | 2,540,346 | 900,564 | ($14,808,755) | ($4,011,506) | ($6,222,466) |
| PSERS | 2,989,928 | 1,906,396 | ($33,496,973) | ($9,843,774) | ($13,412,926) |
| Local 338 | 176,175 | (37,202) | $139,094 | ($337,610) | ($646,774) |

## DISCUSSION

### I. *Appointment of Lead Plaintiff*

#### A. *Legal Standard*

The PSLRA provides that for the purposes of assigning a lead plaintiff:

the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

To determine which plaintiff has the largest financial interest, courts consider four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Baydale v. Am. Express Co.*, 09 Civ. 3016(WHP), 2009 WL 2603140, at *2 (S.D.N.Y. Aug. 14, 2009). The magnitude of the loss is the most significant factor. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y.2007). In calculating the magnitude of the loss, courts in this district have expressed a preference for the LIFO ("last in, first out") methodology over the FIFO ("first in, first out") methodology. *See In re*

*eSpeed*, 232 F.R.D. 95, 101 (S.D.N.Y.2005). The plaintiff with the largest financial interest in the litigation is entitled to a presumption in favor of appointment as lead plaintiff. *Baydale*, 2009 WL 2603140, at *2.

A lead plaintiff must also make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23. *Baydale*, 2009 WL 2603140, at *2. The typicality requirement is satisfied if a plaintiff has suffered the same injuries as the other class members as a result of the same conduct by defendants and has claims based on the same legal issues. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir.1992). In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y.2004). "Other members of the purported class may try to rebut the statutory presumption by showing that the lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of unique defenses." *Baydale*, 2009 WL 2603140, at *2.

#### B. *The Funds Group*

Collectively, the Funds Group has a LIFO loss of $24,640,821, far larger than any other movant. The Funds Group also exceeds the other movants in the categories of shares purchased, net shares purchased, and

net expenditures. However, the Funds Group is subject to certain unique defenses and flaws that render it inadequate as lead plaintiff.

### 1. *Standing*

First, there is an issue as to AP7's standing to file suit.

[N]amed plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless they can thus demonstrate the requisite case or controversy between themselves personally and defendants, none may seek relief on behalf of himself or any other member of the class.

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n. 5 (2d Cir.2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)) (quotations and alterations omitted).

The competing movants argue that AP7 lacks standing because it does not own BofA securities. This Court addressed a similar situation in *Baydale*. There, the issue was whether LFAB, a Swedish money manager, could be lead counsel when it had no legal title to the claim but was the only entity permitted to bring suit on behalf of the funds it managed. In rejecting LFAB as lead plaintiff, this Court stated:

LFAB's status raises complex and novel issues of law which would require extensive factual and foreign legal analysis. Such a diversion would be a needless litigation sideshow.... Moreover, it is uncertain whether the Court of Appeals will adopt the relatively broad view of third-party standing articulated in [a recent district court opinion relied on by LBAB]. Thus, if this Court were to appoint LFAB as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal.

*Baydale*, 2009 WL 2603140, at *3.

Similar concerns caution against appointing the Funds Group here. As in *Baydale*,

AP7 does not own the securities at issue; instead, it submits the opinion of a Swedish law expert that AP7 is the only entity permitted to sue on behalf of the funds it manages. At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class. Without AP7, the Funds Group no longer has the largest financial interest in this action.

### 2. *Group Status*

In addition, this Court has concerns about whether the Funds Group will function cohesively and thereby best serve the interests of the class. "The majority of courts, including those in this District, ... permit[ ] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F.Supp.2d 388, 392 (S.D.N.Y. 2008).

Accordingly, a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs. Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*Varghese*, 589 F.Supp.2d at 392.

Here, there has been no showing that the individual entities comprising the Funds Group had any pre-existing relationship prior to the filing of these actions. In addition, although they have submitted a joint declaration stating that they have discussed "protocols for managing the litigation" and "have implemented communication procedures to enable [them] to confer via phone and/or

email," these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation.

### C. *PSERS*

■ The movant with the next-largest LIFO loss is PSERS. Although PSERS initially filed for lead plaintiff status in conjunction with AP1, a Swedish fund manager, AP1 has withdrawn from consideration. Thus, PSERS's motion for appointment as lead plaintiff is not subject to the same hurdles as the Funds Group.

The primary argument raised against PSERS is procedural. 15 U.S.C. § 78u–4 requires a lead plaintiff to have a filed a motion for appointment as lead plaintiff within 60 days of the filing of the class notice. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). Although PSERS filed such a motion in conjunction with AP1, it did not file a motion individually after AP1 withdrew, and the time for them to do so has expired. Thus, the competing movants argue that PSERS is procedurally barred from acting as lead plaintiff. This Court disagrees. Courts routinely select individual members of a proposed lead plaintiff group to serve as lead plaintiff. *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D.Ohio 2005) ("A group vying for lead plaintiff status does not necessarily rise and fall as a group. Segmentation is a viable remedy and finds support in case law."); *In re Surebeam Corp. Sec. Litig.*, No. 03 Civ. 1721JM (POR), 2004 WL 5159061, at *7 (S.D.Cal. Jan. 5, 2004) (courts have the authority to "break apart a proposed group in search of the most adequate plaintiff"); *In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 306 (S.D.N.Y.2001) (selecting single member of proposed group to serve as lead plaintiff). Nor does the withdrawal of one member of the proposed lead plaintiff group change this result. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 440 (S.D.Tex. 2002). Accordingly, this Court appoints PSERS as lead plaintiff.

### II. *Appointment of Lead Counsel*

■ PSERS counsel, Barrack, Rodos & Bacine, is competent and experienced. Ac-

cordingly, this Court approves the selection of Barrack, Rodos & Bacine as lead counsel.

### III. *Consolidation*

Federal Rule of Civil Procedure 42 provides:

(a) Consolidation. If actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

■ Differences in claims, defendants, or class periods do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation. *Kaplan*, 240 F.R.D. at 91.

Defendants do not oppose consolidation of these actions. They arise out of the same course of conduct by overlapping defendants within overlapping class periods. Moreover, consolidation would serve the interests of judicial economy. Accordingly, these actions are consolidated.

### CONCLUSION

For the foregoing reasons, PSERS is appointed lead plaintiff, and Barrack, Rodos & Bacine is appointed lead counsel. These actions are consolidated under the caption *"Pennsylvania Public School Employees' Retirement System v. Bank of America Corp.,* et al."

SO ORDERED: